UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NEIGHBORHOOD ASSOCIATION OF THE BACK BAY, INC<br>Plaintiff | ) ) ) ) ) ) ) | CIVIL ACTION<br>NO. 04cv11550-RCL |
| FEDERAL TRANSIT ADMINISTRATION and MASSACHUSETTS BAY TRANSPORTATION<br>Defendants | ) ) ) ) ) ) ) ) | |

## AFFIDAVIT OF WINIFRED STOPPS

I, WINIFRED STOPPS, being duly sworn, depose and state as follows:

1. I am an architect employed by Leers Weinzapfel Associates Architects, Inc., 280 Summer Street, Boston, Massachusetts 02210. ("LWAA"). The Massachusetts Bay Transportation Authority ("MBTA") hired LWAA to aid in the evaluation and analysis of the possible sites for elevator entrances to the Arlington Street Green Line Subway Station from the surface, among other responsibilities. My primary role on the project was Project Manager/Project Architect. My duties encompassed primary client contact, design responsibility, and coordination of consultants.

2. As Project Consultant, I received the original 1995 Light Rail Accessibility Program Schematic Design Report (LRAP SDR) prepared by Gannett Fleming, Engineers and Planners, and Stull and Lee, Inc., Architects and Planners. The original report recommended that the elevator be placed on the Northeast, Boston Public Garden, corner or the Southeast, Heritage on the Garden, corner of the intersection of Arlington and Boylston Streets in Boston.

3. At an early meeting with members of the Boston Redevelopment Authority ("BRA"), the Boston Landmarks Commission ("BLC") and the Back Bay Architectural Commission("BBAC") LWAA learned of the existence of a published 19th century engraving of the Arlington Street facade of the Arlington Street Church; LWAA was told that we should not contemplate the construction of a structure that would interfere with the view of the church depicted in that engraving. A copy of the engraving was subsequently provided to LWAA and incorporated in a presentation board discussed with the Massachusetts Historical Commission (MHC), BLC and BBAC on October 21, 1999. See AR762.

4. On July 15, 1997, Jane Weinzapfel and I attended a community meeting organized by the MBTA to discuss the original report and another proposal that considered each of the four corners of Arlington and Boylston streets as a possible elevator location: the southwest corner, where the Shreve, Crump and Low building is located (Option "A", with "A1" placing the elevator in the stairwell closer to the corner, and "A2" placing the elevator in the stairwell further away from the corner.); the northwest corner, where the Arlington Street Church is located (Option"B"); the northeast corner, where the Boston Public Garden is located ("Option C"); and the southeast corner, where an Hermes store is located. (Option "D"). All four options were discussed at the community meeting. The two Eastern corners, options C and D (adjacent to the Public Garden and the Hermes store, respectively), were not favored because of the pedestrian traffic flow – fewer than 20% of patrons come to the station from the East side of Arlington Street. In addition, Option C was not favored because of the historical significance of the Boston Public Garden and the unavailability of public land on which to place the new structures (the Public Garden charter extends to the curb). The Northwest corner, Option B, also presented the historical significance problem, since an elevator there would intrude on the

"historic view" of the Church, depicted in the 19th century engraving described in the previous paragraph. The Southwest corner, Option A, was not favored because of the narrowness of the sidewalk and the heavy flow of pedestrians. An elevator at that corner would constrict the pedestrian flow, and the windows at Shreve, Crump and Low attract "window-shoppers", thereby further increasing congestion. Community representatives and the MBTA agreed that the four options all had serious drawbacks. A number of people suggested that the MBTA should consider the mid-block of Boylston between Arlington and Berkeley for placement of the elevator. As a result, the MBTA hired LWAA to produce additional site analyses for the mid-block placements ("M1" would be located inside the building now occupied by Cohen's Fashion Optical on the south side of Boylston. "M2" kiosks were located in bulb-outs of the sidewalks on either side of Boylston.) The analysis of these additional sites is in the Administrative Record in this case at AR 124-161. The matrix included there shows that none of the mid-block options was viable.

    5.    While preparing the report on the mid-block placements, LWAA decided, with the concurrence of the MBTA, to look at "quarter-block" placements in order to try maintain access to the existing main entrance at the station mezzanine under the Arlington/Boylston intersection. The South side of the street would not allow connection into the mezzanine from a "quarter-block" elevator location due to many difficult underground conditions, including the location of the mezzanine escalator corridor, several hollow sidewalks with basements extending out under the sidewalk, and a large steam pipe. In addition, the sidewalks on the South side of Boylston Street are too narrow to place an elevator kiosk without a bulb-out, which could not be constructed at that location due to the need to maintain the right lane for vehicular turns right onto Arlington Street. The North sidewalk is wider, with an existing bulb-out of the continuity

strip. With the concurrence of the MBTA, the Arlington Street Church was consulted regarding permission to analyze a "quarter-block" potential site located near the Parish House of the Arlington Street Church on the North side of Boylston Street, approximately 120 feet from the corner of Arlington Street. This location was known as option B2. The Church welcomed the possibility of exploring the option of a placement in the B2 location. LWAA made sure that the proposed placement of B2 was far enough down Boylston Street so that it would not intrude upon the historical diagonal corner view of the Arlington Street Church, that is depicted in the 19th century engraving. See AR762.

6. The November 21, 1997 Additional Site Analysis Report (A.R. 124-161) did not analyze the original four proposed locations(at the four corners of Arlington and Boylston streets), since the report's purpose was to look at the new sites that had been identified. One of the original options, A1 and A2 (on the southwest, Shreve, Crump & Low, corner) was in the matrix solely to provide a baseline comparison with the new proposed locations at B2, M1, M2 and D2. (D2, in a "bulb-out" on Boylston Street on the Southeast corner, was proposed by a community representative after the July 15, 1997 meeting; it was included in the Report in order to analyze all community-proposed options. The Additional Site Analysis Report shows that the Shreve, Crump and Low building is a Category 3 historic building. (Thus we understand that it may be eligible for listing and, like the Public Garden and the Arlington Street Church, may be entitled to protection.) See A.R. 124-161.

7. On April 16, 1998, the results of this Additional Site Analysis were discussed in a second Community Meeting at the Transportation Building. A number of community representatives attended this meeting, including one from the Neighborhood Association of the Back Bay, the lead plaintiff in this case. At this meeting, all 12 siting options were discussed

again, including Option B2, which was discussed at length. The MBTA indicated that it had determined that the preferred alternative was Option B2, in the public way adjacent to the Church Parish House. No objections to Option B2 were raised at the meeting.

8. On April 4, 2001, I, along with my colleagues, Jane Weinzapfel and Tom Chung, met with Peter Butler and Donna Laidley from the Federal Transit Administration ("FTA") Ann Lattinvale from the Massachusetts Historic Commission ("MHC"), Michael Cannizzo from the Boston Landmarks Commission ("BLC"), and Don Alexander Goss and Diana Parcon of the MBTA. We met on-site at the Arlington Street Church. My colleagues and I gave a history of what had occurred in the analysis thus far of potential sites for the elevator. In particular, we discussed the background of each potential site, along with its benefits and drawbacks, the latter including the smaller percentage of users coming from the east side of Arlington Street and the narrowness of the curb on the southwest corner. Additionally, we walked to each location, observed the historical significance of the buildings at A and B and the Boston Public Garden at C, and traversed to the mezzanine via the stairs at the A, B, and C locations.

9. During the April 4, 2001 meeting with the FTA, my colleagues and I discussed the viability of a location at the southwest corner of Arlington and Boylston streets, in front of the Shreve, Crump & Low building. We noted that a special elevator would be necessary given the narrowness of the sidewalk. Further, we pointed out that the sidewalk would be only seven feet wide adjacent to the elevator and indicated that pedestrian traffic is already difficult to maneuver at that corner due to existing obstructions and possible crowding around the windows. Peter Butler of the FTA expressed concern about the narrowness of the sidewalk at that location.

10. During the April 4, 2001 site visit, LWAA presented information on large boards. See AR 124-161 for scaled versions of many of the large boards. The boards show that the

Shreve, Crump and Low building is a Category 3 historic building, which is potentially eligible for listing as a National Historic Landmark.

11.  On October 23, 2001, my colleagues, Jane Weinzapfel and Tom Chung, and I met with Donna Laidley of the FTA, Ann Lattinvale from the MHC, Michael Cannizzo from the BLC, Bill Christopher of the Druker Company, and Barbara Boylan, Robert Fagone, George Doherty and Diana Parcon of the MBTA. The purpose of the meeting, as stated in the notice of the meeting sent to all relevant agencies and abutters, was to have a Section 106 review and consultation with the FTA and the MHC for the historical aspects of the station design. This meeting reviewed the information presented at the April 4, 2001 meeting, including the impact on historic structures. Donna Laidley of FTA noted that the proposed B2 design would restore the historic configuration of the Church garden and was satisfied to hear that Judy Selwyn of Preservation Technology would be overseeing masonry restoration work in the area adjacent to the Parish House entrance.

SIGNED under the pains and penalties of perjury this 28th day of March, 2005.

Winnie Stopps, AIA
Leers Weinzapfel Associates Architects, Inc.

# 1353627 v1 - RYANJM - 020445/0007

Michele L. Addonisio
Suffolk County

OFFICIAL SEAL
MICHELLE LISA ADDONISIO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 15, 2010