UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 APR 14 P 4:02

| | |
|---|---|
| NEIGHBORHOOD ASSOCIATION OF THE BACK BAY, INC. et al.<br>          Plaintiffs<br><br>v.<br><br>FEDERAL TRANSIT ADMINISTRATION et al.<br>          Defendants | CIVIL ACTION<br>NO. 04cv11550-RCL<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

The plaintiffs oppose the defendants' cross motion for summary judgment. Because most of the plaintiffs' memorandum in support of its motion for summary judgment applies in opposing the defendants' motion for summary judgment, the plaintiffs adopt this earlier memorandum as part of their opposition to the defendants' cross motions. The plaintiffs also reply to arguments made by the defendants.

## STANDING

Standing does not require injury different from the general public, as the Federal Transit Administration ("FTA") suggests. FTA consolidated memorandum at 17-18. Standing requires merely an injury in fact to an interest arguably within the zone of interest protected or regulated by the statutes the federal agency is claimed to have violated. *Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown*, 875 F.2d 453, 458 (5th Cir.1989); *United States v. SCRAP*, 412 U.S.

669, 686 (1973); *Weintraub v. Rural Electrification Adm'n*, 457 F.Supp. 78, 88 (M.D.Penn.1978); *Save the Courthouse Committee v. Lynn*, 408 F.Supp. 1323, 1331 (S.D.N.Y.1975). The express terms of the Administrative Procedure Act provides standing for judicial review to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. §702.

Economic injury is not required; injury to a plaintiff's aesthetic interest is sufficient for standing. *Sierra Club v. Morton*, 405 U.S. 727, 734-735 (1972); *Weintraub v. Rural Electrification Adm'n*, 457 F.Supp. at 88; *Save the Courthouse Committee v. Lynn*, 408 F.Supp. at 1331-1332. Even harm to widely shared interests provides the injury required for standing. "[T]he fact that particular environmental concerns are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." *United States v. SCRAP*, 405 U.S. at 734.

The affidavits filed with this opposition and reply show that, the individual plaintiffs walk by the Arlington Street Church frequently, and that their view of the historic church building will be significantly diminished by MBTA's proposed structure. Affidavit of Dorothy Bowmer; Affidavit of Marianne Castellani; Affidavit of Ann Gleason; Affidavit of Frederick Gleason. In addition, the MBTA's refusal to refrain from allowing advertising on the proposed elevator

structure and its enclosure (see Affidavit of Dorothy Bowmer and Affidavit of Marianne Castellani) only worsen the aesthetic injury.

Plaintiff Neighborhood Association of the Back Bay, Inc. ("NABB") has standing as an association of members who suffer harm. An association has standing when

> (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). A purpose of NABB is the historic preservation of the Back Bay. Affidavit of Marianne Castellani. This purpose of historic preservation of the Back Bay is not a dead letter, but a vital interest demonstrated by active involvement of NABB's Architectural Committee in regulation of historic preservation in general (Affidavit of Dorothy Bowmer) as well as by advocacy on particular projects. AR 549-551. It has participated in civic advisory committees for on the architectural design and environmental project of proposed development in the Back Bay. *Manning v. Boston Redevelopment Auth.*, 400 Mass. 444, 447-448, 509 N.E.2d 1173, 1176 (1987). It has had inspectors investigating garbage, rubbish and other refuse, and Massachusetts allows these NABB inspectors to bring criminal complaints for violations of the State Sanitary Code. *Commonwealth v. Haddad*, 364 Mass. 795, 308 N.E.2d 899 (1974). Members of this organization not only live in the historic

district of the Back Bay, at varying distances from the Arlington Street Church, but also walk by church. *Id.* Because it is the conduct of administrative agency, and not of the plaintiffs, which matters in this civil action, a case or controversy can exist and be resolved without any participation of individual plaintiffs.

## THE FTA'S OBLIGATIONS ARE SUBSTANTIVE, AS WELL AS PROCEDURAL

The plaintiffs recognize that 16 U.S.C. §470f imposes a procedural obligation on the Federal Transit Administration ("FTA"). The defendants may be suggesting that the importance of the FTA's procedural obligation and its walking through the required procedural steps eliminates its "substantive obligation to weigh effects in deciding whether to weigh the federal action ...." *Save our Heritage, Inc. v. Federal Aviation Adm'n*, 269 F.3d 49, 58 (1st Cir.2001).[1]

Carrying out the "stop, look and listen" of the procedural requirements, FTA's consolidated memorandum at 4, quoting *Narragansett Indian Tribe v. Warwick Sewer Auth'y*, 334 F.3d 161, 166-167 (1st Cir.2003), does not eliminate the FTA's substantive obligation to weigh the effect of the MBTA's proposed project. In crossing railroad tracks, following the procedure of stopping, looking and listening does not eliminate the need to make the correct substantive decision

---

[1] The undersigned plaintiff's attorney apologizes for removing only the closing quotation mark, but not the opening quotation mark, in editing the Memorandum in Support of Plaintiffs' Motion for Summary Judgment 15. Defendant FTA's consolidated memorandum at 4 n.3 makes a similar mistake by inserting the closing quotation when quoting from the Plaintiffs' Memorandum. The FTA's substantive obligation plaintiffs'

of crossing only when the senses do not suggest a train is coming. Similarly, merely following the procedure of stating "no adverse effect" and having a state historic preservation officer concur[2] does not eliminate the FTA's substantive obligation to actually weigh whether an adverse effect exists. *Save our Heritage, Inc. v. Federal Aviation Adm'n*, 269 F.3d 49, 58 (1st Cir.2001)(both substantive and procedural obligation). It is this substantive obligation which the FTA must meet, relying on factors which Congress intended. *D.C. Federation of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246 (D.C.Cir.1972); *Burkholder v. Wykle*, 268 F.Supp.2d 835, 840 (N.D.Ohio 2002), quoting *Motor Vehicle Manufacturers. Ass'n v. State Farm Mutual Auto Ins. Co.*, 436 U.S. 29, 43 (1983).

### FACTORS CONGRESS DID NOT INTEND FOR CONSIDERATION UNDER HISTORIC PRESERVATION STATUTES

The FTA continues to advocate consideration of factors Congress did not intend for consideration in determining whether a federally funded transportation project had an adverse impact on a historic structure or site.

The FTA's most surprising suggestion is that the many years Arlington Street Station has gone without elevator access should favor court approval of the

---

Memorandum in Support discusses is completely about the FTA's weighing the effects of the MBTA project, specifically the FTA's finding of "no adverse effect."

[2] In Massachusetts, the Massachusetts Historic Commission's regulations make its determination of whether a project will have an adverse effect fairly close to a rubber stamp of the federal agency's determination. 950 C.M.R. §71.04(2). Despite the deference Massachusetts gives to a federal agency's determination, the Massachusetts Deputy Historic Preservation Officer did not give a complete and unqualified concurrence with the FTA's determination of "no adverse effect." See *infra*.

FTA's determination of no adverse effect. See FTA's consolidated memorandum at 15 ("last ditch attempt by plaintiffs to block long-overdue accessibility improvements"). Nothing suggests that Congress wanted recipients of federal funds who take mare than a decade to select a location for an elevator entrance should be allowed an increased measure of leeway in deciding whether the recipient's project has an adverse effect on historic structures. In fact, it was the objection of Ronald Druker, the owner of the Shreve, Crump & Low building, (not designated a historic structure) and the Heritage on the Garden building, (a modern building) to what would have been be the primary site for an elevator entrance that prompted the lengthy Leer Weinzapfel report. AR124-161. The Leer Weinzapfel report was an exercise in site selection to accommodate Mr. Druker's potential objection. AR126-133, 137.

Nothing suggests that in determining whether a project adversely affects a building on the National Register of Historic Places which the project abuts, a federal agency should consider the objections of the owner of modern property who does not want an elevator to block the view of the Hermes store windows in Mr. Druker's modern building. AR128.

The defendants suggest that the MBTA's proposed elevator structure does not significantly block the view of the Arlington Street Church. The site selection process which led the elevator to the sidewalk, however, considered not only the visual congestion of one of the possible locations at the southwest (Shreve, Crump

6

& Low) corner, AR126, but also the potential objection of Mr. Druker siting the elevator at that the southeast (Heritage) corner would block the Hermes window. AR128. Blocking the view of a store window in a new building is important enough to reject a site, but blocking part of the view of building on the National Register of Historic Places has "no adverse effect." An attempt to distinguish between these two positions "is so implausible that it could not be ascribed to a difference in view or a product of agency expertise" and thus arbitrary and capricious. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983). An agency's decision may be upheld if its decision process is not ideally clear, but a court should not to make up for such deficiencies that would render a decision arbitrary and capricious. *Id.* In this case, the decision process was clear: avoid delay in the project because of a possible lawsuit by Ronald Druker. AR132, 745.

PROJECT'S USE OF HISTORIC BUILDING OR SITE

The plaintiffs still stand by their arguments that the MBTA's proposed elevator entrance is in front in the historic site of the Back Bay Historic District and within the Arlington Street Church's property. In addition, however, a component of the Arlington Street Station project is the addition of a new ramp and stairs to the Arlington Street Church itself. AR747.

As the Massachusetts Deputy Historic Preservation Officer's January 31, 2003 letter shows, it is not possible to completely determine whether the MBTA's

7

proposed project will have an adverse effect on the Arlington Street Church until the changes to be made to the Arlington Street Church are explained and evaluated. AR460. The MBTA suggests that the Massachusetts Historic Commission is merely asserting, although inartfully, its continuing authority. MBTA's Memorandum of Law at 19. The Deputy Historic Preservation Officer's letter clearly shows she was not inartful. Her letter shows unchallengeable conclusion which the FTA did not reach, that no one can evaluate whether a new ramp and stairs added to the Arlington Street Church will adversely affect the historic character of that building until the nature of the proposed ramp and stairs are known.

The changes proposed to the Arlington Street Church itself show that the MBTA's proposed project uses a historic building under 49 U.S.C. §303. The FTA's complete failure to consider the important aspect of whether those changes to the church building itself will adversely affect the historic character of the building shows that the FTA's determination of "no adverse effect" is arbitrary and capricious. *Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43.

LACK OF DECISION UNDER MASS. HISTORIC PRESERVATION ACT

As noted above, the letter of the Massachusetts State Historic Preservation Officer is clear. In concurring with the FTA determination of no adverse effect,

she[3] specifically excludes the changes to the historic Arlington Street Church itself. AR460. The entire scope of the MBTA's proposed project is not known, so the entire effect of the project, adverse or otherwise, cannot be known. Her assertion that further review is needed is not a mere assertion of authority, but a necessity if state approval is to have any rationality. Her letter clearly distinguishes her position from that of the FTA. The FTA gave a blanket determination that the proposed project had no adverse effect on the historic Arlington Street Church or the Back Bay Historic District. The Commonwealth's Deputy Historic Preservation Officer distinguishes the planned, but as yet unspecified, changes to the church building itself. AR460.

## CONCLUSION

It remains clear, as the plaintiffs explained in their original memorandum, that the FTA substituted amelioration of adverse effect for a lack of adverse effect. That alone shows that the FTA's determination of "no adverse effect" was arbitrary, capricious and violative of 16 U.S.C. §470f and 49 U.S.C. §303. Because the FTA determination violates these statutes, the Court should stop FTA funding to the MBTA for this project.

---

[3] The letter of the Deputy Historic Preservation Officer is her own conclusion, not the conclusion of the Mass. Historic Commission. According to her letter, the only action the commission itself took was a review of information the FTA provided. She states that the concurrence with the FTA determination of no adverse effect is her own. She does not suggest that the commission voted on whether to determine the MBTA's project had no adverse effect. AR460.

9

It is also clear that the nothing in the administrative record describes the ramp and stairs proposed for the historic Arlington Street Church itself as part of the entire project. Without such a description, the FTA's blanket approval of the project as having no adverse effect is necessarily arbitrary and capricious, and violative of 16 U.S.C. §470f and 49 U.S.C. §303. Because the FTA determination violates these statutes, its funding of these projects should be stopped.

The Massachusetts Deputy Historic Preservation Officer's exclusion of the addition of the ramp and stairs to be added to the Arlington Street Church from her concurrence with the FTA's determination of no adverse impact show that the Massachusetts Historic Commission has not approved this proposed project. Because such approval is required under Mass. G.L. c. 9, §27C, the Court should order the MBTA not to proceed with this project.

Plaintiffs Neighborhood Association of the Back Bay, Inc., Dorothy Bowmer, Marianne Castellani, Ann D. Gleason and Frederick C. Gleason

By their attorney

_____
Gerald Fabiano  BBO No. 157130
Pierce, Davis & Perritano, LLP
10 Winthrop Square  5th Floor
Boston, MA 02110
617-350-0950

Certificate of Service

I hereby certify that a true copy of the above document was served upon all counsel of record, by mail, on April 14, 2005.

_____
Gerald Fabiano