IN THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEIGHBORHOOD ASSOCIATION ) | |
| OF THE BACK BAY, INC. et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CASE NO.: 04-11550-JLT |
| v. ) | |
| ) | |
| FEDERAL TRANSIT ) | |
| ADMINISTRATION and ) | |
| MASSACHUSETTS BAY ) | |
| TRANSPORTATION AUTHORITY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT FTA'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO FILE "ADDITIONAL PAPERS"**

Defendant Federal Transit Administration (FTA) opposes plaintiffs' Motion for Leave to File "Additional Papers," including two documents and another brief. The filing is untimely, adds nothing to the discussion, and seems little more than an attempt to introduce a new argument to overcome deficiencies in their principal and reply briefs.

First, both documents were available previously. The first, a one-page excerpt from the Nomination Form for the Back Bay District's listing on the National Register of Historic Places (marked "p. 3."), although undated, clearly pre-dates this litigation, since the District was added to the National Register in 1973. (See www.nationalregisterofhistoricplaces.com). Plaintiffs literally had years to locate the Nomination Form, if they believed it mattered that the southeast corner was outside the Historic District. That they did <u>not</u> believe it made a difference is evident from the fact that although NABB's own website indicates the southeast corner is outside of the district (see www.nabbonline.com), in 2004 plaintiffs argued strenuously that the elevator headhouse should be placed on the corner by the Boston Public Garden, a National

Historic Landmark, see, e.g., AR554, 654-56, 705, 707, and then, in this litigation, that it should be located on the southwest corner, at another historically significant site.

The second document (also an excerpt) likewise is not a recent discovery, since plaintiffs were aware of the March 1995 study at least as early as March 2000. AR552. Since neither document is "new," neither provides a basis for making an entirely new argument, as plaintiffs attempt to do. There is no justification for permitting an untimely effort to bring the documents before the Court, and the Court should not countenance plaintiffs' efforts to take yet another position after the parties' arguments have been fully briefed.

In any event, allowance of the motion and consideration of the documents would serve no purpose. That the official "bounds" of the Back Bay Historic District show that the southeast corner is not within the District is not news. Nor is it significant to the issue before the Court. The record before the FTA did not indicate that the southeast corner is within the district, as plaintiffs seem to suggest, so any contention that the FTA was acting under some misapprehension is simply wrong. See, e.g., AR681, meeting minutes from July 15, 1997 Community Meeting (which a NABB representative attended), forwarded to NABB by the MBTA on April 13, 2004. Plaintiffs' new argument ignores the fact that at that intersection there were a host of historical concerns, and no matter where the elevator kiosk is placed it will be "adjacent to" an historic site or building. Thirty yards away, and across some invisible line (that would put it closer to another historic site, the Boston Public Garden) does not change the analysis. Since plaintiffs' argument throughout this action has been based on visual obstruction (or "constructive use"), it is contradictory to now put forward the suggestion that a headhouse across the street won't partially obstruct some part (indeed, the front facade) of the Church for

passersby approaching from the southeast.

If plaintiffs intend by this late filing to insert an entirely new argument – that placement of the kiosk anywhere in the historic district constitutes a "direct use" of the entire historic district under Section 4(f) – that argument is both untimely and wrong. The ostensibly "new" documents do not suddenly open up that argument to plaintiffs. It is a contention that plaintiffs could have made, but expressly did not make in their principal brief, nor even in their reply brief in response to the FTA's argument that there was no direct use that triggered the requirements of Section 4(f).[1] The argument would be unavailing in any event. A site is "'used' for Section 4(f) purposes "whenever land from or buildings on the site are taken by the proposed project, or whenever the proposed project has <u>significant</u> adverse . . . impacts on or around the site." <u>Adler v. Lewis</u>, 675 F.2d 1085, 1092 (9th Cir. 1982) (emphasis added). <u>See</u> 23 C.F.R. §§ 771.135(p)(1)(i) and (p)(2). This is not a prodigious transportation project, such as routing a highway through a park, <u>see</u> <u>Citizens to Preserve Overton Park, Inc. v. Volpe,</u> 401 U.S. 402, 414 (1971), or re-routing traffic through an historic district. <u>See</u> <u>Concerned Citizens Alliance, Inc. v. Slater</u>, 176 F.3d 686 (3rd Cir. 1999). And, unlike in <u>Concerned Citizens Alliance</u>, there is no direct use of an historic structure within the district that would trigger 4(f). <u>Id.</u> at 693 (observing that because the bridge replacement project at issue would "use" at least one historic structure in the historic district, the project had to meet requirements of Section 4(f)). Neither the street nor sidewalk on the side of the Church are historically significant. It is absurd to suggest that placing a glass elevator structure on Boylston Street, that does not constitute a direct use of the

---

[1] Indeed, plaintiff's response to the FTA's argument in its principal brief was to argue that the new proposed handicap ramp for the Church, which is not being funded by the FTA, constitutes a direct use of the Church itself. <u>See</u> Plaintiffs' Reply Brief at 7, 10.

Church, is nonetheless a "direct use" of Marlborough Street or Commonwealth Avenue or Trinity Place.

As to whether the project will make a constructive use of the entire district, that argument is, if anything, even more inapt. Section 4(f) applies to the use of the individual properties that contribute to the eligibility of the district for listing on the Register, the test being whether the protected activities, features, and attributes of the 4(f) resources would be substantially impaired. See, e.g., Concerned Citizens Coalition v. Fed. Highway Administration, 330 F.Supp.2d 787, 794-95 (W.D. Louisiana 2004) (holding that where plans for proposed connector did not call for demolition of any properties within historic district, FHWA was not arbitrary or capricious in determining that adverse impacts from noise levels and visual blight during seven to ten years of construction were not so severe as to constitute constructive use of the historic district). Here, the elevator kiosk, designed to be as small and harmonious as possible, can hardly be said to cause a severe impairment of the features that qualify the entire district for inclusion in the National Register. Otherwise there couldn't be a gas station, traffic light, paved street, or taxi stand anywhere in the district (nor any entrance to the "T" – stairs or elevator). Nor will there be noise or significant visual impacts district-wide. Even were the Court to entertain plaintiffs new argument, therefore, and consider whether the project makes "use" of the historic district as a whole, the argument fails. Indeed, it falls even farther short of meeting plaintiffs' burden of showing that the project will "use," in some significant way, a historic site, and if a project will have only an insignificant effect, "[n]o 'use' will be deemed to have occurred." Allison v. Dep't of Transp., 908 F.2d 1024, 1028 (D.C.Cir.1990), citing Sierra Club v. United States Dep't of Transp., 753 F.2d 120, 130 (D.C.Cir.1985).

Finally, plaintiffs' suggestion that the FTA's consideration of the project was impaired because it was not provided an early feasibility study the MBTA prepared, is ill-founded. The administrative record contains ample analysis of the early proposed sites to support their rejection, and to demonstrate that approval of the selected site was reasoned and in keeping with applicable laws and regulations. See, e.g., AR124-161, 677-679, 680-690, 706-708.

For the above reasons the Court should deny the plaintiff's untimely motion to introduce documents that are not "new," as an ostensible justification for positing entirely new (and unavailing) arguments.

> Respectfully submitted,
>
> By its attorney,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By:  /s/ Barbara Healy Smith
> Barbara Healy Smith
> Assistant U.S. Attorney
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, MA 02210
> (617) 748-3263

Dated:  12 July 2005

## CERTIFICATE OF SERVICE

This is to certify that I have this 12th day of July 2005, served upon counsel of record not registered for Electronic Case Filing a copy of the foregoing document by e-mail and by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery.

> /s/ Barbara Healy Smith
> Barbara Healy Smith
> Assistant United States Attorney