UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEIGHBORHOOD ASSOCIATION OF THE BACK BAY, INC. et al.<br>    Plaintiffs<br><br>v.<br><br>FEDERAL TRANSIT ADMINISTRATION et al.<br>    Defendants | CIVIL ACTION<br>NO. 04cv11550-RCL<br><br>PLAINTIFFS' OBJECTION TO PORTION OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

The plaintiffs object under Fed.R.Civ.P. 72(b) to the following portions of the Magistrate Judge's Report and Recommendation on Cross-Motions for Summary Judgment ("Recommendation"), dated September 14, 2005:

- the first full paragraph of page 2 of the Recommendation, in which the Magistrate Judge recommends denying the plaintiffs' motion for summary judgment and allowing the defendants' motions for summary judgment;

- the statements in the Recommendation that the southwest corner of Arlington Street and Boylston Street is or was the plaintiff's preferred location for the proposed entrance to Arlington Street Station, at 3, 6 n.6, 6 n.7, 8 and 23;

- the statements in the Recommendation (at 9-10) that the modifications to the Arlington Street Church being done by MBTA contractors are not part of the federal project;

- pages 22 through 25 of the Recommendation, including sub-heading 2 on the finding of defendant Federal Transit Administration ("FTA") on "no use" and the first discussion section, "Direct Use," but not including the second discussion section, "Constructive Use;"

- the Conclusion on page 27 of the Recommendation, in which the Magistrate Judge recommends denying the plaintiffs' motion for summary judgment and allowing the defendants' motions for summary judgment.

The undersigned attorney for the plaintiffs has conferred with the attorneys for the defendants on whether any transcript is needed for the District Court's review of this objection. All counsel agree that no transcript is needed.

INTRODUCTION

Defendant Massachusetts Bay Transportation Authority ("MBTA") selected a site for a new, handicap-accessible entrance to its Arlington Street Station. Recommendation 1. The new entrance includes an elevator and an elevator head house, a glass structure about thirteen feet tall. The site for the new entrance is in the Back Bay Historic District. Recommendation 2-3.

Because the modification of Arlington Street Station is a federally funded transportation program, it must comply with Section 4(f) of the Department of

2

Transportation Act of 1966, 49 U.S.C. §303 ("Section 4(f)").[1]  Recommendation 4, citing *Valley Community Preservation Comm'n v. Mineta*, 373 F.3d 1078, 1084 (10th Cir.2003).  Section 4(f) allows Department of Transportation approval of a program or project which uses a historic site only if no prudent and feasible alternative to the use of that land exists and if all possible planning was done to minimize the harm to the historic site.

> The Secretary may approve a transportation program or project requiring the use … of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if--
> (1)  there is no prudent and feasible alternative to using that land; and
> (2)  the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

49 U.S.C. §303(c).

On May 15, 2004, the FTA[2] issued a "Finding of No Significant Impact," approving the MBTA's proposed construction of new entrances to Arlington Street Station.  Administrative Record ("AR") 744-748.  The plaintiffs commenced this civil action against the FTA and MBTA, challenging the FTA's approval.  With the

---

[1] The Magistrate Judge referred to Section 4(f) as 49 U.S.C. §303(c).  Recommendation 4.  Although the focus in this case is on 49 U.S.C. §303(c), it appears that Section 4(f) of the Dept. of Transportation Act of 1966 included material in the entirety of this section of the U.S. Code.  See P.L. 89-670, §4(f), 80 Stat. 934, restated P.L. 90-495, §18(b), 82 Stat. 824.

3

Magistrate Judge's recommendation to deny the plaintiff's motion for summary judgment and to allow the defendants' motions for summary judgment, the plaintiff's now object to the Recommendation, limiting their objection to the issue of the FTA's approval under 33 U.S.C. §303(c), and in particular to the project's direct use of historic sites.

HISTORIC SITE

The Back Bay Historic District is listed in the National Register of Historic Places. Recommendation 15; AR 265; AR 460. The FTA found that the proposed new entrance to Arlington Street Station is in the Back Bay Historic District. AR 747. The MBTA's proposed new station entrance includes not only the enclosed elevator noted above, *ante* at 2, but also an enclosed stairwell.[3] AR 718, 722-723 (MBTA's Environmental Assessment to FTA); AR 745 (FTA Finding). It is undisputed that the selected site for the new entrance to Arlington Street Station was in the Back Bay Historic District. Recommendation 6 n.6.

The Magistrate Judge's Recommendation suggests a holding that "the reference [in 49 U.S.C. §303(c)] to an historic site clearly refers to a specific building or other structure of historic significance." Recommendation 23. The language of the statute, however, suggests the contrary.

---

[2] The FTA is an administration in the Department of Transportation. 49 U.S.C. §107(a).
[3] The Magistrate Judge's Recommendation did not say that the elevator and its enclosure were the only new surface structures, but the Recommendation did not mention that an enclosed stairwell was also being constructed. To the extent that the Magistrate Judge's

4

The statute does not regulate the use of just a "historic site" for a federally approved transportation project, but "land of an historic site." 49 U.S.C. §303(c). This directly suggests that buildings or other structures are not the limit of the statute's protection.

The Recommendation adopts the MBTA's argument that protecting a historic district under 49 U.S.C. §303 is unreasonable because it would prohibit locating transportation structures anywhere in the historic district. Recommendation 23; Massachusetts Bay Transportation Authority's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-motion for Summary Judgment 14-15. This argument fails for three reasons.

- The statute contemplates physically large areas of protection, because it includes not only land of historic sites, but also "publicly owned land of a public park, recreation area or wildlife and waterfowl refuge." 33 U.S.C. §303(c)

- The statute does not prohibit locating transportation structures on historic sites, but merely fulfills "the policy of the United States Government that special effort should be made to preserve the natural beauty of … historic sites, 33 U.S.C. §303(a), by prohibiting

---

Recommendation relies on the elevator and its enclosure being the only surface feature being added, as it apparently does at 23-24, the plaintiffs object to this omission.

5

>    the Department of Transportation from approving such projects
>    unless
>
>    (1)    there is no prudent and feasible alternative to using that land, and
>    (2)    the program or project includes all possible planning to minimize harm to the … historic site resulting from the use.
>
> 49 U.S.C. §303(c).

- 49 U.S.C. § 303 does not prohibit the MBTA's transportation projects, but only states Congress's determination of what must be done before funding a project.

No ambiguity exists in the statute which suggests that "historic site" means only a building or other structure.

Even if some ambiguity or legislative gap exists in the statute, reference to the administrative interpretation of the statute does not suggest that a historic district on the National Register of Historic Places is not a historic site. See *Chevron U.S.A., Inc. v. National Resource Development Council, Inc.*, 467 U.S. 837 (1984)(deference to administrative agency in interpretation of statutory scheme it is entrusted to administer).

>    In determining the application of section 4(f) to historic sites, the Administration, in cooperation with the applicant, will consult with the State Historic Preservation Officer (SHPO) and appropriate local officials to identify all properties on or eligible for the National Register of Historic Places (National Register). The Section 4(f) requirements apply only to sites on or eligible for the National

6

>Register unless the Administration determines that the application of section 4(f) is otherwise appropriate.

23 C.F.R. §771.135(e).[4]  This regulation under Section 4(f), 49 U.S.C. §303, adds no support to the proposition that "land of an historic site" in this statute is limited to buildings or other structures.  To the contrary, inclusion in the National Register is the regulation touchstone for protection of a historic site, with provisions for broader coverage in some circumstances.

Deputy State Historic Preservation Officer Brona Simon of the Massachusetts Historical Commission informed both applicant MBTA and the FTA that the Back Bay Historic District was a district listed in the National Register of Historic Places.  AR 264; AR 459.  Deference to the interpretation of the statute in the agency's regulations suggests that if a historic district is accepted in the National Register of Historic Places, it is a "historic site" protected under 49 U.S.C. §303(c).  The question is what the FTA did with the information it received from the Massachusetts Historical Commission.

The FTA finding states that the requirements of 49 U.S.C. §303 "do not apply since the proposed work will not adversely affect the historic properties of

---

[4] Federal Transit Administration regulations incorporate 23 C.F.R. Part 771 by reference for procedures for compliance with the National Environmental Policy Act and related statutes.  49 C.F.R. §622.101.  For this project, the FTA itself followed 49 C.F.R. §771.135 in applying 49 U.S.C. §303.  See AR 369 (FTA letter to Mass. Historic Commission); AR 748 (FTA Finding applying 49 U.S.C. in making determination under 49 U.S.C. §303).

7

the Arlington Street Church within the Back Bay Historic District." AR 748. Two readings of the FTA finding are possible,

- a literal reading of the finding, that the FTA considered only the Arlington Street Church as a historic site under 49 U.S.C. §303, but made no determination whether the Back Bay Historic District was a historic site under the statute, or

- the possibility that the FTA meant to consider the Back Bay Historic District as a historic site under 49 U.S.C. §303, but was not clear in its finding.

If the FTA did not consider whether the Back Bay Historic District was a historic site, it was ignoring its regulations which make inclusion on the National Register of Historic Places as the test of whether a site is a historic site under 49 U.S.C. §303.[5] If the FTA considered the Back Bay Historic District a historic site under that statute, the FTA made a determination under its regulations to consider the district a historic site. 23 C.F.R. §771.135(e).

The language of the statute and the agency regulations show that the Back Bay Historic District is a "historic site" protected under 49 U.S.C. §303. The Magistrate Judge's Recommendation to hold that a historic district is not a historic

---

[5] The regulation allows the FTA to apply the requirements of 49 U.S.C. §303 to sites not on or eligible for the National Register if the FTA determines this treatment is appropriate. 23 C.F.R. §771.135(e). The defendants might suggest a strained reading of this regulation to give the FTA discretion to determine that any site, even a site on the

8

site under that statute, as urged by the MBTA, does not follow the statute or its regulation.

USE OF HISTORIC SITE

Upon determining that the Back Bay Historic District is a historic site, the next step is to determine whether the MBTA's proposed new enclosed elevator and enclosed stairwell is a "use" of land in the historic site.  49 U.S.C. §303(c); 23 C.F.R. §771.135(a)(1).  The regulations state that "use" occurs "[w]hen land is permanently incorporated into a transportation facility."  23 C.F.R. §771.135(p)(1)(i).  Building an enclosed elevator and an enclosed stairwell on the Arlington Street sidewalk in the Back Bay Historic District falls not only within the common sense understanding of the word "use," but also within the regulatory definition of "use."

REQUIRED ANALYSIS BEFORE LAND OF A HISTORIC SITE USED FOR TRANSPORTION PROJECT

It is undisputed that the southeast corner of Arlington Street and Boylston Street is not in the Back Bay Historic District.  Recommendation 6 n.6.  The southeast corner of Arlington Street and Boylston Street was twice considered as a location for the new station entrance.  AR 126,-132.

The FTA cannot approve a project which uses a historic site unless

    (1)    there is no prudent and feasible alternative to using that land; and

---

National Register, is not a historic site under 49 U.S.C. §30. Even with such a strained, non-textual reading, the FTA's finding is missing such a determination.

>   (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

49 U.S.C. §303(c). The FTA did not perform this analysis, however. The FTA decided not to apply the requirements of 33 U.S.C. §303(c),"since the proposed work will not adversely affect the historic properties of the Arlington Street Church within the Back Bay Historic District." AR 748.

Congress did not write 33 U.S.C. §303 to let the agency decide whether the use of land of a historic site by a federal transportation project adversely affected the historic site. This statute's first threshold is whether the transportation project merely *uses* the historic site, a condition satisfied in the present case. The FTA's failure to follow the statute's clear framework, as well as its own regulations, was arbitrary and capricious. Having made an arbitrary and capricious decision by ignoring the requirements of 33 U.S.C. §303(c) and 23 C.F.R. §771.135(a)(1), the District Court cannot now make up for the FTA's deficiencies that render its decision arbitrary and capricious. *Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983).

In addition to not following the analysis required by 33 U.S.C. §303(c) and 23 C.F.R. §771.135(a)(1), the FTA neither had the evidence required for a finding of no prudent and feasible alternative, nor made the analysis required by the FTA's regulations. To find that the southeast corner of Arlington Street and Boylston Street (which is outside the Back Bay Historic District) was not a prudent and

10

feasible alternative to using land within the historic site of the Back Bay Historic District, the FTA would have had to follow its own regulations.

> Supporting information must demonstrate that there are unique problems or unusual factors involved in the use of alternatives that avoid these properties or that the cost, social, economic and environmental impacts, or community disruption resulting from such alternatives reach extraordinary magnitude.

23 C.F.R. §771.135(a)(2).

The FTA did not find, and the administrative record does not contain, "unique problems or unusual factors" in locating the elevator to the surface on the southeast corner of Arlington Street and Boylston Street. The Leers Weinzapfel report suggests just the contrary. AR 126-132. The MBTA's proposed location of a new enclosed elevator and enclosed stairway is slightly more costly. AR 132. To say that an abutter's objection to an elevator entrance by his building's Hermes store, see AR 126, is a social, economic, environmental or community disruption that reaches extraordinary magnitude is "so implausible that it could not be ascribed to a difference in view or a product of agency expertise," and thus arbitrary and capricious. *Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983). A more detailed examination of the administrative record makes this clear.

On November 21, 1997, Leers Weinzapfel Associates, Architects, reported on its study for the MBTA. AR 124-161. This report analyzed the potential sites for the elevator from the surface to Arlington Street Station. AR 126. This study

11

reported that after the rejection of two locations for the elevator to the surface, locations at four corners of Arlington Street and Boylston Street were presented at a July 15, 1997 Community Meeting. All four corner locations met with opposition. The opposition of one Ronald Druker is the only opposition noted for rejecting the southeast corner. "Option D, SE corner adjacent to Hermes: Opposed by abutter, Ronald Druker." AR 126. The Leers Weinzapfel report then analyzes additional possible sites and compares them to the location that had been previously been developed to the 30% design level, the southwest corner adjacent to Shreve, Crump & Low. [6] AR 126. Included in this analysis was a new location at the southeast corner, called "D-2", suggested for a "bulb-out" of the sidewalk into Boylston Street. AR 126. The previously considered southeast corner elevator location, adjacent to the Hermes store, is apparently shown as "D-1" on the drawing at AR 127, which shows the elevator location in an existing stairwell entrance at Hermes. In evaluating the second proposal for an elevator location at the southeast corner, the proposal with the bulb-out sidewalk, the Leers Weinzapfel report gives a negative rating on only two categories, the negative traffic effect from the bulb-out and opposition of Ronald Druker. AR 126, 128-132.

    The bulb-out in the sidewalk for this proposal "D-2" was a consequence only of looking for a new, southeast corner location after Mr. Druker's objection to

---

[6] The opposition of Mr. Druker, who was also the abutter on the southwest corner of

12

the previously proposed location on that corner. AR 126, 131, 132. The location now proposed by the MBTA and accepted by the FTA also has vehicular traffic problems, however, noting this location as "Acceptable with Conditions." The Leers Weinzapfel report shows that "BTD and BPW[7] feel that the new stairwell in the sidewalk 'bulb-out' at the Parish House should be uncovered, with a low wall in order to allow drivers to see traffic down Arlington Street at the upcoming intersection." AR 131. The new stairwell which the MBTA proposed and the FTA approved, however, is enclosed. AR 718, 722-723, 745.

The Leers Weinzapfel report considered Mr. Druker's opposition to be so important that this report qualified what would otherwise have been its primary choice,[8] the southwest corner. AR 126, 132.

In its Environmental Assessment to the FTA, the MBTA said, "The southeast corner adjacent to Heritage on the Garden was not acceptable to the abutter and was not desirable due to low pedestrian traffic from that quadrant." AR 723. Repeating the MBTA's statement almost verbatim, the FTA's finding said, "The southeast corner adjacent to Heritage on the Garden was not acceptable

---

Arlington and Boylston Streets, was the only opposition noted to that corner. AR 126.
[7] Apparently Boston Transportation Department and Boston Public Works. See AR 126.
[8] The Magistrate Judge's Recommendation states that the southwest corner, by Shreve, Crump & Low, is the plaintiff's preferred location, apparently referring to the Memorandum in Support of Plaintiff's Motion for Summary Judgment 18. Recommendation 6 n.7. The plaintiffs did not take this position, but noted in their memorandum at 18 that the administrative record showed that the southwest corner near Shreve, Crump & Low was the preferred location, referring to the Leers Weinzapfel report at AR132.

to the abutter and due to low pedestrian traffic from that quadrant." AR 745. The only pedestrian traffic figures before the FTA, however, show that the pedestrian traffic at the southeast corner is almost the same as the pedestrian traffic at the location chosen by the MBTA and approved by the FTA.

The southeast quadrant has 18% of all evening trip origins and patrons. AR 128 (see line "Surface location")  The northwest quadrant (where the MBTA proposed to build their new entrance) has 30% of all evening trip origins and 43% of all patrons, AR 128 (see line "Surface location") but not all of these appear to be expected to use the new proposed entrance. Arlington Street Station already has an entrance at the northwest corner of Arlington Street and Boylston Street, which would remain in the MBTA's proposed scheme. AR 718. The Leers Weinzapfel report also indicates how the pedestrians would use the intersection entrance and the proposed entrance. ("60% of patrons would have to travel ~150 ft further than if elevator were at the intersection, 40% would have a shorter travel distance." AR 128. This breakdown indicates that 40% of the northwest corner pedestrian traffic would at the new, proposed entrance, or only 12% of the evening trip origins and only 17.2% of the patrons.[9] This corresponds with the Leers Weinzapfel analysis that 10% to 20% of patrons would enter at the new stairwell the entrance the MBTA proposed to build. AR 128 (see line "Station Accessible Route").

14

Congress did not provide for an exception to the general rule that an alternative need only be sub-optimal for its rejection. As shown above, the southeast corner, outside the historic district, has not been determined to be either unfeasible or imprudent.

## CONSTRUCTION OF NEW STAIR AND RAMP ON ARLINGTON STREET CHURCH IS A USE OF A HISTORIC SITE, WHICH THE FTA DID NOT REVIEW AS REQUIRED BY 49 U.S.C. §303(c) AND ITS REGULATIONS.

The Arlington Street Church is also listed in the National Register of Historic Places.[10] Recommendation 15; AR 265; AR 460. The FTA recognized that the Arlington Street Church is a historic site under 49 U.S.C. §303, but did not perform the review required by that statute because it found that "the proposed work will not adversely affect the historic qualities of the Arlington Street Church within the Back Bay Historic District." AR 748.

The MBTA's Environmental Assessment to the FTA describes as a mitigation measure, "constructing a new ADA-compliant ramp and stair to improve access to the historic church." AR719. The MBTA had discussed this ramp at previous meetings, down to the detail of the slope of the ramp. AR281. The FTA's Findings of No Significant Impact also noted this proposed new ADA compliant ramp and stairs to improve access to the Arlington Street Church as a

---

[9] 40% of 30% equals 12%. 40% of 43% equals 17.2%.

[10] The MBTA informed the FTA that the Arlington Street Church was a National Historic Landmark. AR 719. The FTA also found that the Arlington Street Church was a National Historic Landmark. AR 747. The plaintiffs do not contend that the Arlington Street Church was a National Historic Landmark.

15

mitigation measure. AR747. This appears to be a use of a historic site, requiring review under 49 U.S.C. §303(c). but the Magistrate Judge's Recommendation rejected the plaintiffs' arguments on the addition of new stairs and a new ramp to the Arlington Street Church for two reasons. Recommendation 24-25.

 A. *Federal Involvement*

 Based on a statement in an *amicus curiae* brief from the Arlington Street Church, the Magistrate Judge concluded that MBTA contractors were going to construct the ramp and stairs on the church, but that the ramp and stairs were not part of the federal project. According to the *amicus*, the Arlington Street Church would be paying for the ramp and stairs "through a reduction in the amount that will be paid by the MBTA for the acquisition from the Church of property interests that are necessary for the construction of the project." Recommendation 9-10.

 The first problem with this approach is that it goes outside the administrative record for facts. "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).

 Even if such a claim of lack of federal involvement from the church ramp and stairs were in the administrative record, the issue arises whether the MBTA

and the FTA can avoid the applicability of 49 U.S.C. §303(c) by "de-federalizing" the portion of the project relating to the church ramp and stairs.

The mere absence of federal funding for a portion of a transportation project does not necessarily resolve whether the unfunded portion has a federal character triggering the application of federal statutory requirements. For highway projects, the issue has been framed, "whether the project segment 'has independent justification or whether construction of this span is dependent upon the construction of the entire highway.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 991 (6th Cir.1989), quoting *Citizens for Balanced Environment and Transporation, Inc. v. Volpe*, 376 F.Supp. 806, 813 (D.Conn.1974).

Although other courts have held that the issue of de-federalization is a material fact in dispute which requires denial of summary judgment, *e.g.*, *Historic Preservation Guild of Bay View*, *supra*, no such factual inquiry is needed in the present case. No question exists that the MBTA would not be using its contractors to construct a ramp and stairs for the Arlington Street Church except as part of the MBTA'sfederally funded accessibility project for Arlington Street Station.

B.     *Pleading*

The Magistrate Judge's Recommendation also notes that the issue of the applicability of 49 U.S.C. §303(c) to the ramp and stairs being added to the Arlington Street Church was not in the plaintiffs' complaint. The

17

Recommendation is correct that under the count in the Second Amended Complaint for violation of Section 4(f) of the Department of Transportation Act, the matter of the ramp and stairs were not specifically mentioned.

The pleadings state, "The Arlington Street Church is a significant historic site."  Second Amended Complaint para. 19.  The pleadings note that in reviewing the project, the Mass. Historical Commission asked the MBTA to submit "more detailed plans for the accessibility modifications to the Arlington Street Church."  Second Amended Complaint para. 27-28.  The Second Amended Complaint includes as Exhibit A the FTA's Finding of No Significant Impact (also at AR 744-748) which notes that "mitigation measures" include a ramp and stairs for the Arlington Street Church.  The Second Amended Complaint also avers,

> 44.    Regional Administrator Doyle's Finding does not consider whether any feasible and prudent alternative to the MBTA's proposed project exists and whether all possible planning has been done to minimize harm to the historic qualities of the Arlington Street Church and the Back Bay Historic District.
>
> 45. Regional Administrator Doyle's Finding does not provide supporting information which demonstrates unique problems or unusual factors involved in the use of alternatives that avoid use of the Arlington Street Church or siting in the Back Bay Historic District in a way which blocks the view of the Arlington Street Church, or which demonstrates that the cost, social, economic, and environmental impacts, or community disruption, resulting from such alternatives, reach extraordinary magnitudes.

Although the plaintiffs' pleadings also averred more specific claims, the pleadings gave notice that a claim was being made under 49 U.S.C. §303 for the MBTA's accessibility project at Arlington Street Station, and more specifically relating to

18

the Arlington Street Church. That should be sufficient notice pleading under Fed.R.Civ.P. 8(a).

As often occurs with the judicial review of an administrative agency proceeding, the administrative record is not provided until after the pleadings. The plaintiffs request that if their complaint is found to be inadequate to raise the question of the addition of a ramp and stairs to the Arlington Street Church as a use of a historic site without the review required under 49 U.S.C. §303(c), that they be allowed to amend their complaint to clearly plead that claim. Because this judicial review of an administrative agency action, will be determined on the administrative record alone, the defendants cannot claim that they would have conducted some discovery on this matter. Allowing the requested amendment of pleadings would fulfill the direction that leave to amend pleadings shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). Although judicial review of an administrative agency action rarely requires a trial, amendment of the pleadings would fulfill the same function as amendment to conform to the evidence at trial under Fed.R.Civ.P. 15(b).

## CONCLUSION

The District Court should allow the plaintiffs' motion for summary judgment and deny the defendants' motions for summary judgment.

                                                Plaintiffs Neighborhood Association of the Back Bay, Inc., Dorothy Bowmer, Marianne Castellani, Ann D. Gleason and Frederick C. Gleason

                                                By their attorney

                                                   /s/ Gerald Fabiano
                                            Gerald Fabiano  BBO No. 157130
                                            Pierce, Davis & Perritano, LLP
                                            10 Winthrop Square  5th Floor
                                            Boston, MA 02110
                                            617-350-0950

Certificate of Service

I hereby certify that a true copy of the above document was served upon all counsel of record, by mail or by electronic service, on September 28, 2005.

         /s/ Ger ld Fabiano
Gerald Fabiano